IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ELLEN SAILES,
          Plaintiff,

v.                                        Civil Action No. 3:16-cv-00325

DAMON R. RICHARDSON et al.,
          Defendants.

## OPINION

The plaintiff, Ellen Sailes, alleges that the defendants harmed her reputation without due process and defamed her by publishing a report about her involvement in Standards of Learning ("SOL") testing irregularities. The defendants, Reginald Williams and Damon R. Richardson, moved for summary judgment on both counts. At the hearing on this motion, Sailes dismissed Williams with prejudice, so this Opinion pertains only to Richardson. (Dk. No. 60.) Because Richardson did not make the statements at issue in conjunction with a termination or demotion, and a qualified privilege applies to his statements, the Court GRANTS his motion for summary judgment.

## I. BACKGROUND

Sailes worked as a part-time, temporary instructional coach for Richmond Public Schools ("RPS"). On June 2, 2015, Sailes assisted with SOL retake testing at Blackwell Elementary School ("Blackwell"). After the test, a student reported to her teacher that Sailes had provided answers to students. The school testing coordinator reported to Williams, then principal at Blackwell, that Sailes had provided answers. Williams reported the allegation to Richardson, the division director of testing for RPS at the time.

Richardson coordinated an investigation into the allegation against Sailes, which involved interviewing the students, the proctor, a teacher who visited the testing room, and Sailes. Richardson also collected written statements from the school testing coordinator, school administrators, Williams, and Sailes. Sailes denied giving students inappropriate assistance, including answers to test questions. Richardson reported his investigation to the Virginia Department of Education ("VDOE"), as required when situations of potential testing compromises arise. His initial online report dated June 4, 2015, referred to accounts that a "teacher/examiner" allegedly assisted students. (Mot. Summ. J., Ex. K.) Richardson updated this online entry on June 8, summarizing interviews with students and teachers as conflicting, and recommending retesting. He further stated that the "instructional coach" would not participate in SOL testing for the remainder of the year. *Id.*

Richardson's July 7, 2015 final report restated the allegation against Sailes, referring to her as a "reading coach," and concluded the investigation did not lead to a definitive finding due to conflicting testimony. (Mot. Summ. J., Ex. M.) The report included Sailes' account, in which she denied that she gave assistance. The report also stated that, "due to the level of concern" surrounding the incident, the "reading coach" would not "be involved in the administration of SOL testing in the future." *Id.*

Sailes has not applied for a position with RPS since this incident. She applied for one job after June 2015, and posted her resume on Indeed.com. No one has indicated that she did not receive a job due to Richardson's report. Sailes alleges that RPS had "scheduled" her to teach summer school during the summer of 2015, but RPS had "taken [this] off the table" after the testing incident. (Am. Compl., at 4.) Sailes testified that she submitted an online application and understood from her conversations with Williams and vice principal Tarnee Hudson that she had

2

the job, but school officials did not return her phone calls after the testing incident. RPS uses an online application process for summer school positions, which generates a report of applicants so that school principals can select teachers. RPS has no record of selecting Sailes to teach summer school in 2015. Sailes received nothing in writing and heard nothing about the position after her June 4, 2015 interview with Richardson.

On September 12, 2015, Richmond Times-Dispatch ran an article titled, *43 Area Students Retook SOLs Last School Year*, which addressed this and other incidents. The paper reported that the investigation into the Blackwell testing yielded inconclusive results and that the reading coach involved would not administer future SOL tests.

## II. DISCUSSION[1]

Sailes alleges, first, that Richardson violated her liberty interest in her reputation without due process and, second, that he defamed her. Richardson moves for summary judgment on both counts.

### A. Liberty Interest Claim

The Due Process Clause of the Fourteenth Amendment protects a person's liberty "to engage in any of the common occupations of life" and ensures "the right to due process where a person's good name, reputation, honor, or integrity is at stake because of what the government is

---

[1] The Federal Rules of Civil Procedure allow parties to move for summary judgment on any claim or defense. Fed. R. Civ. P. 56(a). The familiar principles governing summary judgment allow the court to grant it if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* If "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S 317, 322 (1986). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once the movant satisfies its showing for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–88 (1986).

3

doing to him." *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007) (citations omitted). The government deprives an individual of this liberty interest without due process by making statements where: (1) the employer places a stigma on her reputation, (2) the employer makes the statement public, (3) the employer does so in conjunction with her termination or demotion, and (4) the employer disseminates false information. *Id.* The parties address the first and third elements in their summary judgment briefing, and Richardson asserts qualified immunity as to this claim.

To satisfy the third element, an employer must make stigmatizing remarks "'in the course of a discharge or significant demotion.'" *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 309 (4th Cir. 2006) (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 n.5 (4th Cir. 1988)). The Fourth Circuit defines a significant demotion as "an offer of a job far beneath the one [an employee] had, where being so demoted is to be as effectively excluded from one's trade or calling as by being thrown out on the street." *Hall v. City of Newport News*, 469 F. App'x 259, 262 (4th Cir. 2012) (quoting *Ridpath*, 447 F.3d at 314). A deprivation of this liberty interest does not occur when a particular employer does not rehire the employee, but the employee remains free to seek another job. *Walsh v. Logothetis*, No. 3:13-cv-401, 2014 WL 229588, at *8 (E.D. Va. Jan. 21, 2014).

In ruling on the defendants' motions to dismiss, the Court determined that RPS' failure to use Sailes for SOL testing after the incident does not constitute a demotion. The Court also noted that the complaint did not show that Sailes' position as an instructional coach necessarily entailed administering SOL tests. Even so, the Court held that Sailes adequately pled a violation of her liberty interest because she alleged RPS took away a summer school teaching opportunity.

4

Although Sailes says that RPS gave her a summer school job, then took it away, RPS has no record of selecting Sailes to teach summer school. Her explanation of how she received the offer runs counter to RPS's system of hiring, which consists of a more formal and documented process. Sailes did not receive anything in writing offering or revoking a summer school position pursuant to RPS' normal practice. In responding to the motion for summary judgment, Sailes offers neither argument nor evidence on the summer school issue. Instead, she repeats her unsuccessful contention that RPS' decision to discontinue using her for SOL testing constitutes a discharge or significant demotion. The record would not allow a reasonable jury to conclude that RPS both hired *and* terminated Sailes from a summer school teaching position. In the absence of evidence regarding a summer school teaching position, Sailes has failed to show "a discharge or significant demotion." *Ridpath*, 477 F.3d at 309.

Sailes also has not demonstrated that Richardson's report has "effectively excluded" her from her trade or profession. *Hall*, 469 F. App'x at 262. Sailes offers only the Richmond Times-Dispatch article as evidence on this point, from which she asks the Court to infer that Richardson's comments deprived her of employment opportunities. Her deposition testimony, however, revealed she has applied for only one job since June 2, 2015, and posted her resume on Indeed.com. Moreover, SOL administration does not appear to be integral to her position as an instructional coach, and RPS did not place any information about the testing incident in her personnel file.

Finally, even if Sailes could show a demotion or termination with regard to summer school, such employment action did not occur "in conjunction with" Richardson's statements regarding the SOL incident. *Sciolino*, 480 F.3d at 646. Richardson made these statements as

part of his mandatory reporting to VDOE regarding the SOL testing incident at Blackwell, and the statements did not pertain to personnel decisions concerning summer school.

Thus, Sailes presents insufficient evidence to prove the third element of her liberty claim at trial. Further, even if Sailes made a sufficient showing as to all four elements of this claim, qualified immunity protects Richardson. The doctrine of qualified immunity shields government officials from liability for civil damages when their conduct does not violate a clearly established right. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). An official violates a clearly established right when, at the time of his conduct, the contours of that right are sufficiently clear that a reasonable official would recognize his violation. *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 725 (E.D. Va. 2015).

The first prong of the Supreme Court's qualified immunity test asks whether the facts, viewed in a light most favorable to the plaintiff, make out a violation of a constitutional right. *Pearson*, 555 U.S. at 232. The second prong considers whether the courts had clearly established the constitutional right at the time of the alleged violation. *Id.* As discussed, Sailes does not make out a violation of her constitutional rights. Even if she did, a reasonable officer would not have known that he violated her rights by submitting a mandatory testing report to the VDOE. Although the law is clear that an employer deprives an employee of her liberty interest by making stigmatizing statements in connection with a termination or demotion, a reasonable testing director would not expect to violate an employee's rights by submitting a mandatory report to VDOE outlining a potential testing irregularity, which the report terms inconclusive.

For these reasons, the Court grants summary judgment to Richardson on the liberty interest claim.

### *B. Defamation Claim*

To establish defamation, a plaintiff must plausibly show the defendant (1) published (2) an actionable statement with (3) the requisite intent. *Jordan v. Kollman*, 269 Va. 569, 575, 612 S.E.2d 203, 206 (2005); *see also Fleming v. Moore*, 221 Va. 884, 889, 275 S.E.2d 632, 635 (1981) (noting that Virginia defamation law does not distinguish between actions for libel and slander). An actionable statement must be "both false and defamatory." *Jordan*, 269 Va. at 575, 612 S.E.2d at 206.

Qualified privilege precludes liability for certain potentially defamatory statements. Specifically, the privilege applies to communications between persons on a topic in which they share a common interest or duty. *Larimore v. Blaylock*, 259 Va. 568, 572, 528 S.E.2d 119, 121 (2000). A plaintiff can defeat this privilege if she shows by clear and convincing evidence that the defendant made the statement with malice. *Mann v. Heckler & Koch Def., Inc.*, 639 F. Supp. 2d 619, 636 (E.D. Va. 2009), *aff'd*, 630 F.3d 338 (4th Cir. 2010). A non-exhaustive list of ways to prove malice in this context includes showing that (1) the defendant made the statement knowing it was false or with reckless disregard for the truth; (2) personal spite or ill will motivated the defendant to make the statement; (3) the statement included "strong or violent language disproportionate to the occasion;" or (4) the defendant did not make the statement in good faith. *Goulmamine v. CVS Pharmacy, Inc.*, 138 F. Supp. 3d 652, 665 (E.D. Va. 2015) (citing *Cashion v. Smith*, 286 Va. 327, 339, 749 S.E.2d 526, 533 (2013)).

The qualified privilege applies to Richardson's statements because he and VDOE shared a common interest or duty in his reporting. *See Larimore*, 528 S.E.2d at 121. Richardson reported the alleged testing irregularity at Blackwell and the results of his investigation to VDOE, as required under VDOE regulations. He had a duty to provide the report as division

testing director, and VDOE had an interest in receiving Richardson's report on his investigation into the testing irregularity.

Sailes argues that malice overcomes the qualified privilege in this case. She finds malice in Richardson's failure to thoroughly investigate the testing allegations and to personally interview the students. This kind of nit-picking, however, will not do. No evidence indicates that Richardson acted maliciously, or even carelessly, in making these required reports to VDOE.

A reasonable jury could not find malice in these facts. Therefore, qualified privilege protects Richardson and requires the Court to enter summary judgment in his favor on the defamation claim.

### III. CONCLUSION

For these reasons, the Court grants the defendant's motion for summary judgment.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Order to all counsel of record.

Date: December 22, 2017
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge